**Charles Ray HIGH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–95–00713–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 1, 1999.

---

Kirk J. Oncken, Houston, for Appellant.

John B. Holmes, Dist. Atty. Carol M. Cameron, Asst. Dist. Atty., Houston, for State.

Panel consists of Justices COHEN, O'CONNOR, and TAFT.

## OPINION ON REMAND FROM THE TEXAS COURT OF CRIMINAL APPEALS

MICHOL O'CONNOR, Justice.

On May 6, 1999, this Court reversed the trial court's judgment. On June 6, 1999, the State filed a petition for discretionary review with the Court of Criminal Appeals. Under the authority of Texas Rule of Appellate Procedure 50, we reconsider our majority, concurring, and dissenting opin-

ions; we withdraw our majority, concurring, and dissenting opinions; and we issue these opinions in their stead.

### Background

Charles Ray High, the appellant, pleaded guilty before a jury to aggravated robbery, and the judge assessed punishment of 60 years. In the original appeal, we reversed the conviction because the judge did not admonish the appellant about the range of punishment pursuant to Code of Criminal Procedure Article 26.13(a)(1).[1] *High v. State*, 962 S.W.2d 53 (Tex.App.— Houston [1st Dist.] 1997), *rev'd*, 964 S.W.2d 637, 638 (Tex.Crim.App.1998). We held that, under *Ex parte McAtee*, 599 S.W.2d 335 (Tex.Crim.App.1980), a complete failure to admonish a defendant on the range of punishment for an offense does not constitute substantial compliance under Article 26.13(c) and, therefore, is fundamental, reversible error without regard to whether the defendant was harmed. *High*, 962 S.W.2d at 56.

The State filed a petition for discretionary review, arguing we erred by reversing the conviction without conducting a harm analysis. The Court of Criminal Appeals reversed and remanded to this Court for a harm analysis under Texas Rule of Appellate Procedure 44.2. *High*, 964 S.W.2d at 638. The Court of Criminal Appeals held that, even when the admonishment is not in "substantial compliance" with Article 26.13, the error is still subject to a harm analysis under Texas Rule of Appellate Procedure 44.2. *High*, 964 S.W.2d at 638. However, the Court did not indicate whether the harm analysis should be conducted under subsection (a) or subsection (b) of Rule 44.2. On remand, this Court, relying in part on *Aguirre–Mata v. State*, 962 S.W.2d 264 (Tex.App.—Houston [1st Dist.] 1998), held that the trial court's error was a "constitutional error" subject to review under Texas Rule of Appellate Pro-

---

1. Article 26.13(a)(1) provides: "Prior to accepting a plea of guilty or nolo contendere, the court shall admonish the defendant of: (1) the range of the punishment attached to the offense...." Tex.Code Crim. Proc. art. 26.13(a)(1).

cedure 44.2(a). We reversed the trial court's judgment and remanded the cause.

■ On May 26, 1999, the Court of Criminal Appeals reversed this Court's holding in *Aguirre–Mata* and held that the failure to admonish a defendant about the possible range of punishment was error subject to a harm analysis under Rule 44.2(b). *See Aguirre–Mata v. State*, 992 S.W.2d 495 (Tex.Crim.App.1999). Under Rule 44.2(b), we must disregard the error and affirm if the error did not affect the appellant's substantial rights. *See* Tex. R.App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Because the appellant pled guilty, we review the entire record to determine whether his knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty. *See Rachuig v. State*, 972 S.W.2d 170, 175 (Tex.App.—Waco 1998, pet. ref'd).

## Harm Analysis

■ The following exchange occurred between the trial court and the appellant:

Q. Mr. High, let me just admonish you as to several matters before we proceed. You understand upon your plea of guilty the court will instruct the jury to find you guilty and return a verdict of guilty? You fully understand that?

A. Yes.

Q. Okay. You, of course, have discussed this with Mr. Davis?

A. Yes.

Q. And are you—you're presently competent? Are you mentally competent?

A. Yes.

Q. Do you understand the nature of this proceeding?

A. Yes, sir.

Q. You have discussed any defenses you have with Mr. Davis in aiding him in representing you?

A. Yes, sir.

The trial court never mentioned the range of punishment attached to the offense to which the appellant pleaded guilty. Nevertheless, the State contends the trial court did admonish the appellant on the range of punishment and the appellant understood the applicable range of punishment because (1) the jury charge stated "the Court, as required by law, has admonished him of the consequences" and (2) the competency evaluation reflects the appellant "was unsure of the maximum sentence that he could receive. He stated that he has been told that he can receive anywhere from five years to life in prison."

We do not agree with the State that boiler plate language in a jury charge or the statement of the psychologist in a competency evaluation indicates the trial court admonished the appellant about the range of punishment. *See Murray v. State*, 561 S.W.2d 821, 822 (Tex.Crim.App.1977) (article 26.13(a) provides that it is the *trial court* that must admonish the defendant of the punishment range attached to the offense). Further, we will not revisit our earlier determination that the trial court erred by not admonishing the appellant on the range of punishment. *High*, 964 S.W.2d at 638. Instead, we determine only whether the appellant was harmed by the error.

Here, there is no affirmative showing that the appellant had full knowledge of the punishment range. In January 1999, the appellant told the psychologist he was "unsure" of the maximum sentence, but he had been told the punishment range was five years to life. That was correct then. However, almost six months later, the appellant pled true to the enhancement paragraph, raising the minimum sentence to 15 years. The psychologist's statement is evidence that the appellant did not have full knowledge of the applicable punishment range before entry of his guilty plea.

Therefore, the trial court's error had a substantial and injurious effect or influence on the appellant's decision to pled guilty.

We sustain point of error one.

We reverse the trial court's judgment and remand.

Justice COHEN concurring.

Justice TAFT dissenting.

MURRY B. COHEN, Justice, concurring on remand from the Texas Court of Criminal Appeals.

I agree with Justice O'Connor that this case should be reversed and that *Carranza v. State*, 980 S.W.2d 653 (Tex.Crim.App. 1998), does not control our inquiry into harm.

I believe this case is governed by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Here, as in *Boykin*, there is no record of any admonishment, except the judge's statement that the jury would find appellant guilty. Specifically, as in *Boykin*, there is no record of any admonishment concerning the range of punishment. I emphasize the missing punishment admonishment throughout this opinion because this record contains some evidence of harm from its absence.[1] Faced with a similar record, the *Boykin* Court held:

> It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea *without an affirmative showing that it was intelligent and voluntary.*

395 U.S. at 242, 89 S.Ct. at 1711 (emphasis added).

The seven-judge majority in *Boykin* was emphatic that the prerequisites of a valid guilty plea cannot be presumed; they must be shown on the record:

> The requirement that the prosecution *spread on the record* the prerequisites of a valid waiver is no constitutional innovation ... Presuming waiver from a silent record is impermissible. *The record must show ...* that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver.
>
> We think that the same standard must be applied to determining whether a guilty plea is voluntarily made.

395 U.S. at 242, 89 S.Ct. at 1712 (emphasis added).

The Court repeated its insistence on a record of the constitutionally required admonishments:

> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, *it leaves a record adequate for any review that may later be sought ....*

395 U.S. at 243, 89 S.Ct. at 1712 (emphasis added). The court concluded that there was reversible error *"because the record does not disclose* that the defendant voluntarily and understandingly entered his pleas of guilty."* 395 U.S. at 244, 89 S.Ct. at 1713 (emphasis added).

The Court quoted with approval the Pennsylvania Supreme Court:

> A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an *on the record examination of*

---

1. Appellant was not admonished of his right to counsel and to a jury trial, but he was not harmed because he had both. He was not told of his right against self-incrimination, but he was not harmed because he did not testify. As stated below, I believe *Boykin* requires this case to be reversed without a harm analysis, as *Boykin* was. I cannot believe, however, that *Boykin* would require reversal for failing to admonish a defendant of rights that he asserted, such as those appellant asserted (jury, counsel, self-incrimination).

*the defendant* which shall include . . . *the permissible range of sentences.*

395 U.S. at 244 n. 7, 89 S.Ct. at 1713 n. 7 (emphasis added).

I believe *Boykin* means that the defendant not only must be admonished, but the admonishment—including the range of punishment—must be on the record. Otherwise, reversal is required, as occurred in *Boykin.* The Supreme Court has unanimously reaffirmed this rule from *Boykin.* "In *Boykin,* the Court found reversible error when a trial judge accepted a defendant's guilty plea *without creating a record affirmatively showing* that the plea was knowing and voluntary." *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992) (emphasis added). The *Parke* court stated that *Boykin* created a "presumption of invalidity" if no record of admonishments existed, and it stated that *"Boykin colloquies have been required for nearly a quarter of a century."* 506 U.S. at 30, 113 S.Ct. at 524 (emphasis added). There was no *Boykin* colloquy here.

According to the two dissenting justices in *Boykin,* the majority required reversal "solely" because no admonishments were in the record. 395 U.S. at 245–46, 89 S.Ct. at 1713. Moreover, the majority did so even though Boykin never even alleged, much less proved, his guilty plea was involuntary or that he did not know the consequences. The dissenters were especially upset that Boykin had *never* contended— not in the trial court, not in the Alabama Supreme Court, not in his petition, brief, or argument in the United States Supreme Court—that his plea was coerced or that he did not know its consequences. 395 U.S. at 245–46, 89 S.Ct. at 1713–14.

The dissent is important and deserves to be read because of the light it sheds on the broad holding of the *Boykin* majority:

The Court today holds that petitioner Boykin was denied due process of law and that his robbery convictions must be reversed outright, solely because "the record [is] inadequate to show that peti-

tioner . . . intelligently and knowingly pleaded guilty" . . . Moreover, the Court does all this at the behest of a petitioner who has never at any time alleged that his guilty plea was involuntary or made without knowledge of the consequences. I cannot possibly subscribe to so bizarre a result. . . .

Petitioner was not sentenced immediately after the acceptance of his plea. . . . That proceeding occurred some two months after the petitioner pleaded guilty. During that period, petitioner made no attempt to withdraw his plea. . . . Petitioner heard the judge state . . . that . . . [he] might be sentenced to death. Again, petitioner made no effort to withdraw his plea.

On his appeal to the Alabama Supreme Court, petitioner did not claim that his guilty plea was made involuntarily or without full knowledge of the consequences. In fact, petitioner raised no questions concerning the plea. In his petition in this court, and in oral argument by counsel, petitioner has never asserted that the plea was coerced or made in ignorance of the consequences. . . . This result is wholly unprecedented. . . . This petitioner makes no allegations of actual involuntariness.

The Court's reversal is therefore predicated entirely upon the failure of the arraigning state judge to make an "adequate" record. . . .

I would hold that petitioner Boykin is not entitled to outright reversal of his conviction simply because of the "inadequacy" of the record pertaining to his guilty plea.

395 U.S. at 244–49, 89 S.Ct. at 1713–15. This argument was rejected by a large majority in *Boykin.* There was no inquiry into harm in *Boykin* for a simple reason— Boykin never claimed he was harmed. He never claimed his plea was involuntary.

I think *Boykin* means that (1) failure to admonish regarding the consequences of a guilty plea, including the range of punish-

ment,[2] is constitutional error, (2) the error occurs when the constitutionally required admonishments are not spread upon the record, and (3) the absence of that record constitutes plain error that requires reversal without allegation, much less proof, of harm. Appellant did not receive the admonishment on punishment required by *Boykin*. Therefore, under *Boykin*, reversal is required without regard to harm.

Nevertheless, the Court of Criminal Appeals has ordered us to conduct a harm analysis. *High v. State*, 964 S.W.2d 637, 638 (Tex.Crim.App.1998). In my opinion, that is contrary to the constitutional law of the United States as declared in *Boykin*. The authority cited for this in *High* is *Cain v. State*, 947 S.W.2d 262 (1997), but *Cain* was not a case of failure to give a punishment admonishment. *Cain* was about the failure to warn a United States citizen that non-citizens could be deported. The absence of that admonishment in *Cain* was obviously harmless, unlike the lack of a punishment warning in this case. In addition to that important factual difference, there is an equally important legal difference: The right to be told the range of punishment when pleading guilty is constitutionally required, *Boykin*, 395 U.S. at 244 n. 7, 89 S.Ct. at 1713 n. 7, but there is no constitutional right to be told about deportation. *State v. Jimenez*, 987 S.W.2d 886, 889 (Tex.Crim.App.1999).

In *Carranza*, the Court again held, correctly in my view, that harm is required before reversing for failure to warn about deportation. 980 S.W.2d at 656–58. As in *Cain*, that was all that had to be said because there was no other defect in the admonishment, but the court used language possibly suggesting that all admonishments are the same. They are not the same. Some are constitutionally required, and some are not. That is the difference between *Boykin v. Alabama* and *State v. Jimenez*.

The *Carranza* court did not mention *Boykin*. Instead, it cited *McCarthy v.*

*United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), for the proposition that "the admonishment itself is not constitutionally required," but merely "aids the trial court" in determining whether the plea was voluntary. 980 S.W.2d at 656. If "the admonishment itself" language in *Carranza* referred to the punishment admonition, the Court of Criminal Appeals finds little support in *McCarthy*. No constitutional issue was before the Supreme Court in *McCarthy*:

> This decision is based *solely* upon our construction of Rule 11 and is made pursuant to *our supervisory power* over the lower federal courts; *we do not reach any of the constitutional arguments petitioner urges* . . . .

394 U.S. at 464, 89 S.Ct. at 1169 (emphasis added). Moreover, none was decided:

> We hold that a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided *in Rule 11.*

394 U.S. at 463–64, 89 S.Ct. at 1169.

And while the Court of Criminal Appeals quoted *McCarthy* for the proposition that "the procedure embodied in Rule 11 has not been held to be constitutionally mandated," 980 S.W.2d at 656, that was true for only 61 more days after *McCarthy* was decided. It became untrue on June 2, 1969, when the Supreme Court decided *Boykin*. As the *Boykin* dissenters pointed out, *Boykin* imposed Rule 11's requirements on the states as a matter of constitutional law. 395 U.S. at 247, 89 S.Ct. at 1714 (" . . . What is now in effect being held is that the prophylactic procedures of Criminal Rule 11 are substantially applicable to the States as a matter of federal Constitutional due process.").

Finally, *McCarthy* does not say that harm is required before reversing for lack of a punishment admonition. It says the opposite. *McCarthy* established a *per se*

---

**2.** *See Boykin*, 395 U.S. at 244 n. 7, 89 S.Ct. at 1713 n. 7, quoted above in this opinion.

rule of reversal without harm in federal courts for failure to put a Rule 11 admonishment on the record. The government argued that it should be allowed remand in order to conduct a hearing to show the error was harmless. That argument "completely ignores the two purposes of Rule 11," nine justices declared. 394 U.S. at 465, 89 S.Ct. at 1170. The Supreme Court emphatically rejected the idea that, if no admonishment is on the record, the government should still win if it could show circumstantially that the plea was, in fact, voluntary. "We reject the Government's contention that Rule 11 can be complied with although the district judge does not personally inquire whether the defendant understood the nature of the charge." 394 U.S. at 467, 89 S.Ct. at 1171. "There is simply no adequate substitute for demonstrating on the record at the time the plea is entered the defendant's understanding of the nature of the charge against him." 394 U.S. at 470, 89 S.Ct. at 1173. "We thus conclude that *prejudice inheres* in a failure to comply with Rule 11 ... A defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew...." 394 U.S. at 471–72, 89 S.Ct. at 1173–74 (emphasis added). The unanimous *McCarthy* court concluded:

> It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

394 U.S. at 472, 89 S.Ct. at 1174.

That is a per se rule of reversal without harm under Rule 11, and it has been the federal statutory law of the land since April 2, 1969. *Boykin* established the same rule as a matter of federal constitutional law 61 days later.

---

**3.** I realize that Federal Rule of Criminal Procedure 11 now has a harmless error provision that did not exist when *Boykin* was decided.

The dissenters in *Boykin* recognized this and stated it plainly:

> The Court's reversal is therefore predicated entirely upon the failure of the arraigning state judge to make an "adequate" record. In holding that this is a ground for reversal, the Court quotes copiously from *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), in which we held earlier this Term that when a *federal* district judge fails to comply in every respect with the procedure for accepting a guilty plea which is prescribed in Rule 11 of the Federal Rules of Criminal Procedure, *the plea must be set aside and the defendant permitted to replead, regardless of lower-court findings that the plea was in fact voluntary.*

*Boykin,* 395 U.S. at 247, 89 S.Ct. at 1714 (emphasis original and added).

In *Cain,* the Court of Criminal Appeals did not mention *Boykin v. Alabama* or any Supreme Court case, except *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The Court cited *Fulminante* for the proposition that only constitutional errors labeled "structural" by the United States Supreme Court require reversal without proof of harm. *Cain,* 947 S.W.2d at 264. It concluded that failure to warn of deportation was not "structural," and, thus, harm must be shown to obtain relief.

There are two reasons why *Fulminante* (and *Cain* ) do not require a harm analysis in this particular case. First, neither case had anything to do with a punishment admonishment. *Fulminante* had nothing to do with any admonishment. It had nothing to do with guilty pleas. It decided whether the harmless error rule would apply to involuntary confessions. Naturally, it did not mention, much less overrule, *Boykin v. Alabama.* According to the United States Supreme Court, *Boykin* is good law.[3] *See Parke v. Raley, supra.* To

---

FED.R.CRIM.P. 11(h). *See United States v. Johnson,* 1 F.3d 296 (5th Cir.1993) (explaining harmless error standard of Rule 11).

argue that *Fulminante* limits *Boykin* would be, simply and respectfully, wrong. *Fulminante* contains a laundry list of constitutional errors labeled "trial error"— errors that require proof of harm—and *Boykin* error is conspicuously absent from that list. *Fulminante*, 499 U.S. at 306, 111 S.Ct. 1246. *Fulminante* also lists several "structural" errors that require reversal without harm; *Boykin* is absent from that list, too. That does not help the State, however. If, as I believe, the issue before us is the scope of *Boykin v. Alabama,* I believe the opinion to read is *Boykin,* not *Arizona v. Fulminante.* Unless *Boykin v. Alabama* has been overruled, and my Shepard's citator says it hasn't, I believe the Court of Criminal Appeals' opinion in *High* has created a rule that, as applied to a punishment admonition, conflicts with the United States Constitution as construed in *Boykin.*

What is my duty? I took an oath to protect, preserve, and defend the Constitutions and laws of the United States and of this State. Thus, even though I think it violates the rule in *Boykin,* I believe I am bound to do as the Court of Criminal Appeals has ordered and conduct a harm analysis. The harm standard, of course, is that for constitutional error. TEX.R.APP. P. 44.2(a). This is constitutional error. *Boykin, supra.*

Was appellant harmed? On January 5, 1995, appellant told the psychologist he was "unsure" of the maximum sentence, but he had been told the punishment range was 5 years to life. That was correct then. Later, on June 27, 1995, appellant pled true to the enhancement paragraph, and that raised the minimum sentence to 15 years. Moreover, appellant expressed no doubt on January 5, 1995 about the mini-

mum punishment, which was then 5 years, as he had been told.

The standard of review is decisive in this case. We must reverse unless we are convinced *beyond a reasonable doubt* that the error made no contribution to the conviction. TEX.R.APP. P. 44.2(a). I cannot say that with confidence beyond a reasonable doubt. If, as the record shows, appellant thought the maximum risk might be less than life, that could have influenced him to accept that lower level of risk by pleading guilty. If he had known for sure that the actual risk was a life sentence, he may have been unwilling to accept, by pleading guilty, that level of risk and instead tried to avoid exposure to it by pleading not guilty. Either would have been a rational choice. The purpose of an admonishment is to make sure the choice is made knowingly. This record does not convince me beyond a reasonable doubt that it was.

TIM TAFT, Justice, dissenting on remand from the Texas Court of Criminal Appeals.

Rule 44.2(b) of the Texas Rules of Appellate Procedure provides: "Any other [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). We have concluded that the burden of showing harm under rule 44.2(b) is upon the appellant. *Merritt v. State,* 982 S.W.2d 634, 637 (Tex. App.— Houston [1st Dist.] 1998, pet. filed).

The record shows that, nearly six months before his plea of guilty, when asked what range of punishment he faced, appellant told the doctor examining him for competency that he was unsure of the maximum, but he had been told the punishment range was five years to life. This

Moreover, the Supreme Court has held that harm is required to obtain relief in a collateral attack brought to cure a Rule 11 violation. *United States v. Timmreck,* 441 U.S. 780, 783– 85, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979). The *Timmreck* opinion did not mention, much less overrule, *Boykin.* Rule 11, of

course, cannot overrule a decision of the United States Supreme Court that, like *Boykin,* is based on federal constitutional law. Rule 11(h) has apparently overruled *McCarthy v. United States, supra,* a case decided based on Rule 11, not on the United States Constitution.

**650**

was the unenhanced range of punishment that was raised to a minimum of 15 years by one enhancement in this case.

In the realm of admonishments, it is well settled that even an erroneous admonishment constitutes substantial compliance with the statutory requirement that an accused be admonished regarding the range of punishment. *See Robinson v. State*, 739 S.W.2d 795, 799, 801 (Tex. Crim. App. 1987) (defendant admonished that range of punishment was two to 10 rather than two to 12). The burden is then on the accused to show that he was misled or harmed by the erroneous admonishment such that he would not have entered his guilty plea if he had been correctly admonished. *Id.* at 801.

Here, appellant was slightly mistaken in his understanding of the lower end of the enhanced range of punishment. Nevertheless, the record tends to show that appellant was substantially aware of the range of punishment. Appellant has shown nothing in the record indicating he was misled to plead guilty based on his lack of knowledge of the range of punishment.

The majority opinion holds that appellant's substantial rights were affected because appellant did not have a full knowledge of the applicable punishment range. I submit that such a holding is not consistent with the standard applicable to review of erroneous admonishments which are the same as the rule 44.2(b) standard that should be applied to the error here.

Accordingly, I would hold that appellant has not shown that the failure to admonish him of the range of punishment affected his substantial rights. I would overrule this argument in appellant's first point of error and proceed to review the other arguments in appellant's first point of error and his other four points of error. To the majority's decision to reverse, I respectfully dissent.